## Watkins et ux. *v.* Overland Motor Freight Company, Inc.

Argued November 25, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Randolph W. Childs,* of *Adams, Childs, McKaig & Lukens,* for appellant.

*Matthew K. Stevens,* for appellee.

OPINION BY MR. JUSTICE BARNES, January 11, 1937:
Plaintiffs, who are husband and wife, brought this suit to recover damages for personal injuries and prop-

erty losses sustained by them when a car driven by the husband and owned by the wife, collided with the rear of defendant's truck, which was parked at night without lights on the highway.

The accident occurred on December 21, 1933, about 11 o'clock P. M. at a point near New Brunswick, New Jersey, on the super-highway between Elizabeth and Trenton, known as Route 25. The husband was driving at the time of the accident, with his wife seated beside him on the front seat of the car. She had been asleep for sometime before the accident, but awakened an instant before the crash as the result of her husband's exclamations. According to plaintiff's evidence he had been traveling just before the accident at a speed around forty miles per hour, on the four lane highway, but had slowed down when he saw at a distance ahead a car making a left turn. Suddenly there appeared in his path the truck of defendant, parked in one of the lanes of traffic, without rear lights. Before his brakes could stop the car, it crashed into the rear of the truck, seriously injuring the wife-plaintiff and damaging the car belonging to her. The husband-plaintiff was also injured.

The plaintiffs reside near Philadelphia. The husband testified that he made the trip that day because of business which he had in New York City, and "Mrs. Watkins decided to drive with me in the car, so she could do some shopping for her youngster." After the wife had finished the shopping in the afternoon she visited friends living in Brooklyn, at whose home later she was joined by her husband. In the evening they proceeded together upon the return trip to Philadelphia. They had frequently made such one-day trips, the husband on his business to New York City, and his wife accompanying him to shop or to visit friends there.

The trial judge directed a compulsory nonsuit against the husband on the ground of contributory negligence, a motion to remove which was overruled by the court be-

low, and thereafter abandoned by the husband. The case of the wife-plaintiff was submitted to the jury. The trial judge charged at length on the question whether the husband was the agent of the wife, and the case went to the jury primarily upon that question. The jury rendered a verdict against the wife-plaintiff in favor of the defendant. The court below overruled her motion for a new trial and entered judgment against her upon the verdict. This appeal is taken by the wife-plaintiff.

We have examined the record in this case with care, and fail to find any evidence from which, either directly or by inference, it can be established that the husband was the agent of the wife in the operation of the automobile. The only evidence bearing on the question was that the husband drove to New York City on a business trip in an automobile owned by his wife, who decided to go along to do some shopping and visit with friends. On their return trip the collision occurred. It also appears that they had taken similar trips to New York prior to the accident.

With no additional facts than these, the trial judge permitted himself to be led away from the evidence in the case into supposititious situations entirely remote from the factual picture before him. While they may have been intended to help the jury, they could have no effect other than to confuse their minds and divert their attention from the real issues of the case. For example, he said to the jury [we quote from the charge]: "I dare say—and I inject the thought here—that it is a very interesting point and it may make some law in this State. I inject the thought here that when a wife, in her own car, has her husband drive the car for the purpose of a shopping expedition, she must, obviously, tell the husband, from time to time, where she wants to go, that she wants to go to shop 'A', and then she goes to shop 'A'; and she says, 'now, I want to go to shop "B" ', and, afterwards, wherever she wants to go. That would

involve the thought, at least, that in that respect the wife has some direction of the car, direction of where it is to go. It is her car, under the evidence."

This instruction had no relation to the particular facts of the case, yet it followed a portion of the charge [quoted below] which placed the husband in the position, during the trip, of a mere chauffeur or servant of his wife. There is no testimony to support such a finding, and its effect upon the jury in the form in which it was stated was harmful to the wife-plaintiff.

Our examination of the record discloses the fact that this trip to New York was undertaken primarily for the purpose of the husband's business. That his wife accompanied him to "shop" and to visit her friends was merely incidental. The husband was the bailee of the automobile. The fact that his wife decided to go along on the trip did not terminate the bailment. Under the decisions of this Court it is clear that her status was that of a guest passenger in the car which her husband was driving, and not that of her husband's master. The fact that she was the registered owner of the car did not preclude her from being a guest passenger therein, or give rise to the inference that she had any control of its operation while it was being driven by her husband.

We are unable to find in the record any evidence which would justify the trial judge in instructing the jury that [we quote again from the charge] . . . "in this case, the proofs are that this wasn't just a pleasure ride, as such, but that it had been the practice and the custom of the wife-plaintiff, owner of the car, to have her husband drive the car to New York *for the purpose of enabling her* to do some shopping, and also to visit friends, and that, indeed, on this occasion, a trip for this purpose was made, namely, to enable the wife-plaintiff to do some shopping, presumably at different places, different shops, stores, or where not, and, thereafter, visit friends, and it was on the return from such a trip that this thing occurred."

This, in effect, was a positive direction to the jury to find that the husband was the servant and agent of the wife in operating the car, from which it followed, from other portions of the charge, that she was in law chargeable with the negligence of her husband. This instruction was unsupported by the evidence, and was harmful and prejudicial to the case of the wife-plaintiff. In the absence of any evidence in the record to sustain it, this charge was error and would require that a new trial be granted.

We had before us in *Rodgers v. Saxton*, 305 Pa. 479, the question of agency of the husband for the wife under the same circumstances as presented by this appeal. We said (p. 485) : "The relation of principal and agent or that of master and servant does not necessarily arise from the fact that the wife owns the car which her husband is driving and in which she is a passenger. . . . The husband is still the head of the family, and when he is at the wheel of that car, even with his wife present, the presumption is that he is in control of the car, and, in the absence of evidence to the contrary, he is solely responsible for its operation. Ownership of a car does not necessarily mean control of that car, any more than ownership of any other property necessarily means control of it."

In *Klein v. Klein*, 311 Pa. 217, the suit was brought by guests in the car at the time of the accident against the wife, owner of the car, on the theory that the husband-driver was her agent or servant. The parties had driven to Cleveland on business of the husband; the wife accompanied him, and while there visited her aunt who resided in Cleveland. We held there were no circumstances to warrant a finding that the husband was defendant's agent in driving her car. We stated the rule thus (p. 219) : "Appellees' counsel contend, however, that the relation between appellant and her husband, in respect of driving the car when this accident happened, was that of principal and agent, or of master

and servant, and hence she is liable for the negligence of her husband, as her agent or servant. We think otherwise. Although such relations, legally speaking, may exist between a husband and wife, it is only in rare instances that they do. While the unity, which for so long a time was held to exist between them, has, by statute, been modified to a considerable degree, in matters like the present it has not been changed at all. In the use of the property of each other, no one, least of all the husband or wife, thinks of the husband as being the principal or master of the wife, or the wife as being the agent or servant of the husband, or vice versa, and the law must recognize this fact in exactly the way that the world at large recognizes it, for such is actually the relation of the parties . . . under such circumstances, when the husband is driving, 'even with his wife present, the presumption is that he is in control of the car, and, in the absence of evidence to the contrary, he is solely responsible for its operation.' "

The case of *Cox v. Roehler*, 316 Pa. 417, was an action by a third party against both the husband and the wife on the ground that the car which caused the injuries was operated by the husband as the servant of the wife. At the time of the accident the wife was not in the car, which was owned jointly by the husband and the wife. The accident took place as the husband was returning from a trip to a farm owned by the wife, but managed and operated by the husband. We held there was no evidence that the husband was the servant of the wife, so as to make her liable for his negligence.

In the three cases cited, as in the present one, there was no evidence to establish directly that the husband was agent for the wife. There was no evidence, even in those cases where the wife was present, to show that the wife had any control or share in the control of the car. "The negligence of the driver of a vehicle can be imputed to a passenger therein only when the evidence justifies a finding of the passenger's right to a share in

the control of that vehicle at the time of the negligence. This is the test of such imputability whether the driver and the passenger were engaged at the time in a 'joint enterprise' or not": *Rodgers v. Saxton,* supra, (p. 488).

Here the trial judge, in submitting to the jury the question whether the husband was the servant or agent of his wife in driving the car, in the absence of any affirmative evidence upon that point, committed reversible error.

Judgment reversed and a venire facias de novo awarded.